UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWIN ROJAS, *et.al.* <br><br> Plaintiffs, <br><br> v. <br><br> X MOTORSPORT, INC. *et. al.* <br><br> Defendants. | No. 16-cv-2982 <br> Judge: Gary S. Feinerman |

PLAINTIFFS' MOTION FOR SANCTIONS

NOW COME the Plaintiffs, by and through their attorney, Blake Horwitz, Esq., of The Blake Horwitz Law Firm, LTD., and brings this Motion for Sanctions, pursuant to the Inherent Power of the Court. In support of this Motion, Plaintiffs state as follows:

During the recent deposition of Plaintiff Magalia Rojas ("Magalia"), Defense counsel Jill Lewis engaged in unexplainably offensive behavior. To understand the impact of this behavior, background is in order.

The underlying litigation concerns a Hispanic man, Edwin Rojas and his mother, Magalia who were returning a car to X-Motorsport, Inc. Both were locked inside the dealership, by a police officer and X-Motorsport employees because Edwin would not accept the car dealerships' offer regarding the return of the vehicle he had purchased. After the doors were locked, Edwin called 911. Magalia who has a third-grade education and a compromised emotional state, became extremely fearful.

Prior to the deposition, Plaintiffs' counsel Blake Horwitz, on multiple occasions, explained to this Court and Defense counsel that Magalia suffers from significant emotional and psychological difficulties. Mr. Horwitz filed a motion on this score, tendering to Defense

1

counsel, under seal, photographs of her medication. (Dkt No. 118, *also see* Dkt no 121, Plaintiffs' Motion to Submit Medical Information). The purpose of these motions was to secure additional time to respond to discovery. *Id.* In response, this Court undertook an on-the-record discussion of the medications Magalia is taking. Therefore, there is no dispute that Plaintiffs' counsel made multiple representations to the Court and defense counsel, prior to Magalia's deposition, that Magalia had difficulty participating in discovery due to a psychological impediment.

During the deposition, Magalia testified that she is disabled from depression and is taking medication.[1] She also testified as follows regarding the experience she was having *during* the deposition:

```
13     A.  I'm not doing well.
14     MR. HORWITZ:  How do you feel?
15     A.  I have a knot in my stomach and I feel like I
16  want to vomit. And I'm feeling like I want to run away.
17  And I feel here, I feel very anxious, very nervous.
18     MR. HORWITZ:  How long have you been feeling that
19  way in the deposition today?
20     A.  Since I started talking I felt it.
21     MR. HORWITZ:  Is it hard for you to talk about
22  this?
23     A.  Very difficult. Never been in a place like
24  this.
```

(Ex A, p 59), Deposition of Magalia Rojas, taken on December 20, 2016).

Defense counsel for the municipal defendants acknowledged that Magalia was suffering from an "anxiety issue". *Id.*, p 62.

---

[1] To prevent further *in camera* or under seal motion practice, Plaintiffs are not attaching her deposition transcript to this Motion. It is undisputed that Magalia testified in this regard in the beginning of her deposition, pp 5-7.

Subsequently, Mr. Horwitz explained that the deposition was "hard" for Magalia, that she "may not be able to continue forward, so we'll see" and "she may not be doing too well". *Id.* pp *Id.* pp 64-65. Attorney Lewis responded with "Okay". *Id.* p. 65. Mr. Horwitz explained that his client was "crying" and he was trying to make sure she was "able to answer questions". *Id.* pp 65-66. Mr. Horwitz then suggested that, given Magalia's emotional state, Mr. Horwitz could provide the dates of birth of Magalia's adult children separately instead of Ms. Lewis asking Magalia that question. Ms. Lewis responded, "No" *Id.* p 66.

After recognizing that Magalia was suffering to the point of "wanting to vomit" and "run away", Ms. Lewis told Mr. Horwitz to "shut up". *Id.* p 73. Ms. Lewis then asked Magalia if she had some "extra Lorazepam", asking Magalia specifically: **"I think I might need some Lorazepam. Do you have any extra?"** *Id.* p. 73-74. Mr. Horwitz then asked Magalia and her son to leave the room due to Ms. Lewis' offensive behavior. (*Id.* p. 73-74). Ms. Lewis then told Mr. Horwitz to "shut his big fucking mouth". *Id.* p 74.-75.

### Legal Analysis

"[A] lawyer at a deposition should not engage in conduct that she would not engage in before a judge in a courtroom." *Clay v. Consol Pa. Coal Co., LLC*, 2013 U.S. Dist. LEXIS 141235, *4 (N.D.W. Va. July 22, 2013). The Modern Rules of the American Bar Association provide that an attorney is prohibited from "engag[ing] in conduct that is prejudicial to the administration of justice" that a "lawyer knows or reasonably should know is harassment or discrimination on the basis of [a] disability." Model Rules of the American Bar Association, 8.4 (d) and (g); Northern District of Illinois LR 53.50[2]. *Also see Clay*, 2013 U.S. Dist. LEXIS 141235 at *4 (court applied the local rules to attorney deposition misconduct). Courts around the

---

[2] The Local Rules of the Northern District of Illinois adopt the Model Rules of the American Bar Association, LR. 53.50.

3

country have fashioned varying sanctions for conduct during depositions, including monetary sanctions, admonishment, and censure. *See e.g. Redwood v. Dobson*, 476 F.3d 462 (7th Cir. 2007) (censuring and admonishing attorneys);;; *GMAC Bank v. HTFC Corp.*, 248 F.R.D. 182 (E.D. Pa. 2008) (ordering attorney to pay, jointly and severally, fees incurred in a deposition); *Freeman v. Schointuck*, 192 F.R.D. 187 (D. Md. 2000) (ordering a letter of apology); *Carroll v. Jacques*, 926 F. Supp. 1282 (E.D. Tex. 1996) (sanctioning counsel for Defendant $500 for each time he called Plaintiff's counsel an idiot or ass); *Van Pilsum v. Iowa St. Univ. of Sci. and Tech.*, 152 F.R.D. 179 (S.D. Iowa. 1993) (ordering a new deposition before a discovery master); *Unique Concepts, Inc. v. Brown*, 115 F.R.D. 292 (S.D.N.Y. 1987) (invoking 28 U.S.C. §1927 and the court's inherent power to impose monetary sanctions);.

"[A]n attorney, after being admitted to practice, becomes an officer of the court, exercising a privilege or franchise"[3]. *Howell v. State Bar of Texas*, 843 F.2d 205, 207 (5th Cir.). "As officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens." *Id*. It is not acceptable for an attorney--"to attempt to use the judicial system … to harass an opponent in order to gain an unfair advantage in litigation." *Coane v. Ferrara Pan Candy Co.*,

---

[3]The *Howell* court tracked similar authority rising up to the Supreme Court:

> "[A]s officers of the court, attorneys owe a duty to the court that far exceeds that of lay citizens. Judge, later Justice, Cardozo, a leading and much-quoted articulator of this duty, said that "like the court itself, [the lawyer is] an instrument or agency to advance the ends of justice." *People ex rel. Karlin v. Culkin*, 248 N.Y. 465, 470-71, 162 N.E. 487 (1928). This language was quoted with approval by the Supreme Court []*In re Snyder*, *In re Snyder*, 472 U.S. 634, 644, 105 S. Ct. 2874, 2880, 86 L. Ed. 2d 504 (1985). The Supreme Court expressed this obligation in similar language in describing attorneys as "assistants to the court in search of a just solution to disputes." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 460, 98 S. Ct. 1912, 1920, 56 L. Ed. 2d 444 (1978) (quoting *Cohen v. Hurley*, 366 U.S. 117, 124, 81 S. Ct. 954, 958, 6 L. Ed. 2d 156 (1961).

*Howell v. State Bar of Tex.*, 843 F.2d 205, 207 (5th Cir. 1988).

"Lawyers also have obligations by virtue of their special status as officers of the court". *Mallard v. United States Dist. Court for S. Dist.*, 490 U.S. 296, 310-311 (1989).

898 F.2d 1030, 1033 (5th Cir. 1990); *see also Carroll v. Jaques Admiralty Law Firm, P.C.*, 110 F.3d 290, 293-94 (5th Cir. 1997).

In *Chambers v. NASCO, Inc.*, the Supreme Court ruled that a district court has the inherent power to "fashion [] appropriate sanctions for conduct which abuses the judicial process." 501 U.S. 32, 44 (1991). This power exists even where procedural rules govern the same conduct. *See id*. at 49; *see also Kovilic Constr. Co. v. Missbrenner*, 106 F.3d 768, 772-73 (7th Cir. 1997). When reviewing the misconduct of an attorney during a deposition, the Fifth Circuit ruled that "When a party's deplorable conduct is not effectively sanctionable pursuant to an existing rule or statute, it is appropriate for a district court to rely on its inherent power to impose sanctions." *Carroll*, 110 F.3d at 292-93; *see also Chambers*, 501 U.S. at 50. Lengthy analysis has also been undertaken by two district judges in the Northern District referable to attorney misconduct. *See Fuery v. City of Chi.*, 2016 U.S. Dist. LEXIS 135086 (N.D. Ill. Sep. 29, 2016); *Colyer v. City of Chi.*, 2016 U.S. Dist. LEXIS 40, *1 (N.D. Ill. Jan. 4, 2016). The use of the inherent power of the Court seems to be the most applicable for attorney misconduct during a deposition.[4]

The utilization of the Court's inherent authority is "to reprimand the offender" and "to deter future parties from trampling upon the integrity of the court." *Dotson v. Bravo*, 321 F.3d 663, 668 (7th Cir. 2003); *see also Malibu Media, LLC v. Tashiro*, 2015 U.S. Dist. LEXIS 90575, *26-27 (S.D. Ind. Apr. 15, 2015).

In the instant case, knowing that Magalia was suffering from a psychological disability, Defense counsel mocked Magalia by asking to take Magalia's psychiatric medications after

---

[4] *See, e.g., Redwood*, 476 F.3d 462; *Clay,* 2013 U.S. Dist. LEXIS 141235 at *4 ;; ; *GMAC Bank* 248 F.R.D. 182; *Freeman*, 192 F.R.D. 187; *Carroll*, 926 F. Supp. 1282; *Unique Concepts*, 115 F.R.D. 292 , *Van Pilsum*, 152 F.R.D. 179.

being fully advised that Magalia was wanting to vomit and run away from the deposition experience. This conduct, in and of itself, demonstrates a discriminatory act directed at Magalia's disability in violation of Model Rule 8.4(d). Engaging in further conduct in prejudicing the administration of justice, Ms. Lewis told Mr. Horwitz to shut up on three occasions and subsequently to "shut the fuck up". This conduct should be reprimanded pursuant to this Court's inherent authority.

Ms. Lewis' conduct can only be interpreted with the specific design to intimidate Plaintiffs from furthering the litigation. Edwin Rojas, who was present during the entirety of his Mother's deposition, watched his mother break down and suffer through the ridicule of a deposition conducted by an officer of the Court. The Plaintiffs have little faith that this scenario can be remedied. Now Magalia is even more terrified to tell her story to the jury and Ms. Lewis wins.

By utilizing the inherent power of this Court, Plaintiffs pray for some or all of the following relief: (1) the disqualification of Ms. Lewis from further defending X Motorsport in any further litigation; (2) the entry of a protective order to prevent Ms. Lewis from coming into contact either of the Plaintiffs and/or Plaintiffs' witnesses at any time; (3) the entry of a monetary sanction against Ms. Lewis; (4) the striking of the questions submitted by Ms. Lewis on behalf of X Motorsport; (5) the payment of costs for Magalia's deposition transcript; (6) the entry of a fine against Ms. Lewis payable to Magalia and Edwin Rojas; (6) the entry of an award of attorney fees for having to prosecute this motion, participate in Magalia's deposition, and all other further motion practice referable to this motion; (7) the entry of a fine for the purpose of disciplining Ms. Lewis; (8) any and all other relief this Court deems met and just.

WHEREFORE, Plaintiffs pray that this Court grant the instant motion.

                                                                Respectfully Submitted,

                                                                *s/ Blake W. Horwitz*
                                                                Blake W. Horwitz, Esq.
                                                                Attorney for the Plaintiffs

The Blake Horwitz Law Firm, LTD.
111 W. Washington St., Ste. 1611
Chicago, IL 60602
Phone: (312) 676-2100
Fax: (312) 445-8741